[No. 2282]

# GEORGE OLIVER ROBERSON, APPELLANT, v. LUCY ROBERSON, RESPONDENT.

[169 Pac. 333]

1. DIVORCE—"DESERTION."
   When the husband gives up the domicile at one place and establishes another, and in good faith urges the wife to live with him there, her refusal to accept the invitation, if without sufficient reason, amounts to "desertion."

2. DIVORCE—DESERTION—SUFFICIENCY OF EVIDENCE.
   In suit by husband, who was first guilty of desertion, for divorce on the ground of desertion of the wife, evidence *held* insufficient to show that husband's invitation to the wife to come and live with, him was made in good faith.

APPEAL from Second Judicial District Court, Washoe County; *R. C. Stoddard*, Judge.

Action for divorce by George Oliver Roberson against Lucy Roberson. Judgment for defendant, and plaintiff appeals. **Affirmed.**

*George Springmeyer*, for Appellant:

The desertion proved by plaintiff's oral testimony and by letters was what may be called constructive desertion. It appears, indirectly, that a possible reason why the lower court denied the decree was that it took judicial notice of its own record, to the effect that in November, 1915, a suit by plaintiff against the defendant for annulment of the marriage was tried and relief denied plaintiff. For this we can find no legal sanction. Any cause of action arising subsequently to a suit of any kind between the parties entitles the injured party to a divorce in the same manner as if there had been no previous suit. A previous suit for maintenance does not affect the right of divorce given by subsequent acts of the defendant. (*McMullin v. McMullin*, 56 Pac. 553.)

In order that a cause of action may have accrued to the plaintiff, he must have made in good faith an offer to the defendant to return and live with him as his wife; he must have had the bona-fide intention of living with her, and he must not have written the letters simply for the

purpose of getting a cause of action to entitle him to a divorce. The law is well settled, and has been from the earliest day of the common law, that the wife must go to the matrimonial domicile, unless it be such a place as will affect her health or endanger her safety. "The husband has the right to decide where the matrimonial domicile shall be, and if he changes his residence and the wife declines to go with him, she thereby deserts him." (Bishop, Divorce and Separation, vol. 1, secs, 788, 1714, 1715, 1717; Nelson, Divorce and Separation, secs. 68, 79; Spencer, Domestic Relations, sec. 371; Tiffany, Persons and Domestic Relations, 2d ed. secs. 34, 103.) "As a general rule, the husband has the right to direct the affairs of his own house, and to determine the place of abode of the family; and it is in general the duty of the wife to submit to such determination, unless there is good reason for her refusal to do so. * * * The refusal of the wife to accompany him in a change of domicile, unless a change is plainly unreasonable, constitutes desertion by her." (9 R. C. L. 151.)

The refusal of the wife to go to a new home established by the husband constitutes desertion on the part of the wife. (*Hunt* v. *Hunt*, 29 N. J. Eq. 96; *Albee* v. *Albee*, 31 N. W. 157; *Hair* v. *Hair*, 10 Rich. Eq. 163, *Beck* v. *Beck*, 163 Pa. St. 649; *Franklin* v. *Franklin*, 77 N. E. 48; *Baurens* v. *Giroux*, 40 South. 224; *Greene* v. *Greene*, 11 Pick. 410; *Hackettstown Bank* v. *Mitchell*, 4 Dutcher, 516; *Williams* v. *Saunders*, 5 Coldw. 60; *Dalhousie* v. *McDonall*, 7 Cl. & F. 817; *Dolphin* v. *Robins*, 7 H. L. Cas. 390; *Sanderson* v. *Ralston*, 30 La. Ann. 312; *Gahn* v. *Darby*, 39 La. Ann. 70; *Angier* v. *Angier*, 7 Phila. 305; *Buell* v. *Buell*, 84 Pa. 821; *Sisemore* v. *Sisemore*, 21 Pac. 820; *Roby* v. *Roby*, 77 Pac. 213.)

It is immaterial that the party to the marriage relation who refuses to resume the marital relation was not originally the offending party. (*Hanberry* v. *Hanberry*, 29 Ala. 719; *Fellows* v. *Fellows*, 31 Me. 342; *Hooper* v. *Hooper*, 34 N. J. Eq. 93; *Ogilvie* v. *Ogilvie*, 37 Or. 171;

*Conlin* v. *Conlin*, 163 Iowa, 420; *Creasey* v. *Creasey*, 168 Mo. App. 68; *McAllister* v. *McAllister*, 62 Atl. 1131; *Crow* v. *Crow*, 23 Ala. 583; *Silverstein* v. *Silverstein*, 178 Ill. App. 145.)

[No appearance for Respondent.]

By the Court, COLEMAN, J.:

Appellant brought suit in the district court of Washoe County, Nevada, to obtain a divorce from his wife upon the ground of desertion. Service of summons was had, but, the defendant failing to appear and plead to the complaint, her default was entered. At the trial plaintiff offered evidence in support of the cause of action pleaded in the complaint, and upon his testimony the case was submitted for the consideration of the court. Judgment was entered in favor of the defendant, and, a motion for a new trial having been denied, this appeal was taken.

The facts of the case are these: The parties were married in Martin County, N. C., and left immediately for Raleigh, where they lived for five months. The plaintiff then obtained a position at Hemlet, N. C., with a railroad company, and the defendant went to her parents in Martin County. Plaintiff held his position for about two weeks, when he went to New York State, where he remained for about one year, coming to this state the latter part of December, 1914.

It appears from the testimony that some time in 1915 the plaintiff brought a suit in Washoe County to have the marriage between himself and his wife annulled, which suit was decided in favor of the wife. On November 29 of the same year he wrote his wife as follows:

"Reno, Nevada, November 29, 1915.

"Mrs. Lucy Roberson: The result of the annulment suit and your conduct, particularly the way you broke your word to me, have made me dislike you more than ever and I have completely gotten over any regard for you, if I ever had any. However, despite your continued deception and cruelty, I must face the music, and therefore I ask you to come as my wife and make your home

with me, as the law requires. I can never forgive you, but I am doing what I must do, even though you have completely ruined my life and prospects. Of course, you will understand that I cannot live in North Carolina, and that I could not even hold up my head in any town with you as my wife. And you will also understand that I shall probably have to go to work on some farm at small wages and little chances of getting ahead. You cannot expect any assistance from any of my relatives, and you will simply have to live as I live and suffer whatever hardships I must go through.

"If you will live with me as my wife, which I now ask you to do, write me, and I will arrange for your coming when I am able. Respectfully."

On the trial of the present action the following testimony was given, the questions being asked by the presiding judge:

"Q. Why did you separate from your wife at that time (alluding to the time of their separation in Raleigh)? A. Why, I didn't feel like I wanted to live with her, and I don't presume she did with me.

"Q. You changed your mind after the jury in the case in this court decided against you? A. I saw there was nothing else to do.   *   *   *

"Q. There is one child, as I understand, born subsequent to the marriage? A. Yes, sir."

In reply to plaintiff's letter above quoted, the defendant wrote at great length, the letter being full of expressions of love and good-will. We quote the following extract from her letter:

"Ponder well and long these lines before you offer a final answer. Upon that answer hinges the destiny of us both. God grant that my suggestions and asseverations of love may touch a responsive chord in your heart, and arouse you from the lethargy under which you so long have been languishing. Strike the chords of Life's great autoharp whenever you may, and there comes forth the wails of misery and woe commingling with those of laughter and song. So the world's history is written, and you and I cannot hope to be exceptions thereto.

"But, I am done. I have written all that a patient, heartbroken wife and mother could say, and I can only leave the consequences with Him who doeth all things well.

"I shall longingly await your reply, and with outstretched arms and a bruised, yet loving, heart, am once more willing and anxious to welcome you and your inheritance of wifely devotion and love.

"Imploring God's benedictions upon you, and confident in the ultimate triumph of truth and justice, I remain,

"Sincerely and lovingly, your wife,　　　　Lucy."

On the 15th day of December, 1915, plaintiff acknowledged receipt of defendant's letter of the 8th, again asking her to come and live with him in Nevada, to which the defendant replied in a letter of January 6, 1916. On February 3, 1916, plaintiff wrote as follows:

"Reno, Nevada, February 3, 1916.

"My Dear Lucy: I have been thinking over your letter and Mr. Stubbs's letter very carefully, and all I can say is that, I have not changed my mind, and that I think you and your lawyer must be trying to put up some job on me, as you did when you were here in Reno.

"Nevada is my home, and I cannot and will not go to North Carolina to be thrown in jail. At least, I can keep out of jail in Nevada so far as you are concerned. Perhaps, I would not be safe in another state.

"I refer you again to my letters of November 29th and December 30th. I do not mean to write you again on this subject. Sincerely."

On March 20 the defendant replied with a long letter, full of expressions of love, and in concluding her letter said:

"Love to you from your forsaken wife and child. Remember us in your prayer, and pray that we may be loved and cared for if you do not care for us. May God always bless you and make you perfectly happy is my prayer. Will you sometimes think of your forsaken wife and babe and pray for us?

"Your brokenhearted wife, yours,　　　　Lucy."

Appellant contends that the refusal of his wife to come to Reno and live with him constitutes desertion on her part, and that the lower court erred in not granting him a divorce. One of the grounds for divorce in this state is "willful desertion, at any time, of either party by the other, for the period of one year." (Rev. Laws, 5838.)

**1, 2.** As a general proposition of law, we think it may be said that, since the burden of supporting the family rests upon the husband, he is entitled to choose the place of domicile of the family; and whenever he gives up his domicile in one place and establishes it in another, and in good faith urges his wife to live with him at the place where his domicile is thus established, it is her duty to accept the invitation, and her refusal to do so, without a good and sufficient reason, amounts to a desertion. (9 R. C. L. 365; 1 Nelson, Div. & Sep. sec. 68; 14 Cyc. 613.) But this is a case somewhat different from the ordinary case where the head of the family merely decides to change his place of residence. In the case at bar the plaintiff left his wife in North Carolina and went to New York, for the reason, as he testified, that he did not feel like he wanted to live with her, and after being in Nevada for some months brought suit to annul the marriage. Thus it would seem that he was the one who was first guilty of desertion, and, as he stated in his testimony, offered her a home in Nevada because there was "nothing else to do." In the face of this situation, considering the tone of his letters, should we reverse the judgment of the trial court? The rule which we believe should control such a situation is laid down in 9 R. C. L. 373, as follows:

"Though one spouse has separated from the other without excuse, if he or she in good faith seeks a reconciliation, and offers to return, and the latter refuses such overtures, the former is not to be deemed thereafter, as a general rule, guilty of desertion; and it seems that after such overtures for a reconciliation have been made in good faith by the spouse offending in the first instance, the other spouse's refusal to accept them and to resume

the marital cohabitation may constitute desertion on the latter's part. The spouse offending in the first instance must, however, exercise all reasonable efforts in good faith to right his or her wrong, and the other spouse is entitled to a reasonable time for a consideration of the overtures for reconciliation in order to convert his or her refusal to resume the marital cohabitation into a desertion by the spouse so refusing."

Was the plaintiff's invitation to the defendant to come and live with him extended in good faith? The letter of November 29, in which plaintiff opened up the negotiations for his wife's coming to live with him, was frankly brutal. In the very first line he charges her with conduct which he said caused him to dislike her more than ever, overlooking the fact that the wife had a legal right to defend the annulment suit, and that both the court and the jury decided in her favor. If he, in good faith, invited her to come and live with him, why was it necessary for him to allude to the past? Would it not have been the natural thing for him to have said nothing about the past? Throughout the entire letter he makes her acquainted with the fact that he does not want her to come, but that he is writing her to do so because he "must face the music" and do as the "law requires," and this, too, in the face of the fact that he had been guilty of desertion.

It may be that under the circumstances as they existed the law would not require the plaintiff to love the defendant before he could in good faith extend her an invitation to come and live with him, but we certainly maintain that he could not extend the left hand to welcome her and with the right smite her, and then insist that he had in good faith urged her to come and make her home with him. Still, figuratively speaking, that is exactly what he did. Not content with expressing his dislike for his wife, and notwithstanding the fact that he was a stenographer and had a position as such, he went out of his way to discourage his wife from coming by telling her that he might have to go to work on a farm at small wages, with

little chance of getting ahead. Ordinarily one who in good faith invites his wife to come and live with him lays aside all past unpleasantnesses and manifests a spirit befitting the offer. In our opinion, the so-called invitation to his wife was, in spirit, a warning that he did not want her to come. By this letter he branded himself as unworthy of the love, confidence, sympathy, and trustfulness of his wife. Why should she, in the face of such a letter, leave home, friends, parents, relatives, and the associations of youth, to be at the mercy of one so heartless? Yet in her letter of reply she did not refuse to come to him; she simply pleaded with him, endeavoring to rouse within his breast the nobler sentiments of man. But all in vain; for so late as February 3, 1916, apparently fearing that she might forget it, he again wrote to his wife, calling attention to the cruel letter of November 29. It looked as though he feared that time might serve to blot from her memory that frightful letter. He did not want her to forget that letter; he wanted her to read it again. Is there any right-thinking man who would permit his daughter to go thousands of miles to one who could display such brutal tendencies as were manifested in the letter of November 29? Evidently the district judge before whom the case was tried concluded that the letter in question was not written in good faith, but for the purpose of paving the way for the divorce suit which followed. We think the language of the court in *McClurg's Appeal*, 66 Pa. 373, where the plaintiff requested his wife to come and live with him after a period of separation, is most appropriate. Said the court:

"In view of all these facts, we are not able to say that the court below erred in disregarding these offers to return. It was a question for the court whether the offers were made in all due sincerity, and with an intention bona fide to perform his marital duty. An unmeaning formality cannot always be accepted as a genuine act. It may have the hand of Esau, and yet betray the voice of Jacob. It must be remembered that the desertion was on his part, not hers, and was fully proved."

In the case of *Fishli* v. *Fishli*, 2 Litt. (Ky.) 338, the court said:

"Nor do we think that the offer made in the letter he exhibits, and afterwards repeats in his answer, of supporting her in his own house or elsewhere, calculated to defeat her right to a divorce. The letter is dated a few weeks before the lapse of two years from the time he had left her; and if the offer had been of a character, and made in a manner which she ought to have accepted, it would have been entitled to great consideration, if not to conclusive effect; but we cannot admit that the offer was of such a character, or made in such a manner as she ought to have accepted. The offer was not to live with her in the relation of husband and wife; and as she was, by the nature and terms of the marriage contract, entitled to stand in that relation to him, she was not bound to accept of an offer to stand in any other relation. But the manner in which the offer was made is no less objectionable than the matter of it; for, instead of candidly acknowledging the wrong which he had done her, and promising to atone for it, as in justice he ought to have done, he accompanies the offer he makes with the same groundless insinuations against her chastity which he repeats in his answer; and, instead of making the offer through the medium of some friend of hers, it is sent, as far as appears, by a stranger, without any instructions to attempt conciliation. The whole circumstances, in fact, evince that the offer was made, not with a sincere wish that it should be accepted, but that it was, in truth, a mere artifice, devised with the hope of thereby defeating the right of the complainant to a divorce, which, in the lapse of a few weeks, would be complete."

The offer on the part of the plaintiff must have been made "in good faith, free from improper qualifications or conditions, and really intended to be carried out in its spirit, if accepted." (*Fulton* v. *Fulton*, 36 Miss. 528.)

In *Woolard* v. *Woolard*, 18 App. D. C. 326, in considering a somewhat similar case, the court says:

"To convert her continuation of this voluntary separation into the statutory desertion, it was, at the very least,

incumbent upon him to show that he had, in a conciliatory manner and in perfect good faith, invited her return without condition.    This proof has not been made.

"Notwithstanding the terms of the first letter written to the defendant and the precaution taken to copy it and insure positive proof of its delivery, it would probably be too harsh to say, in the light of some explanatory statements of friends in whom the plaintiff confided, that this letter was not an attempt, in good faith, to bring about reconciliation, but rather to lay the foundation for a bill of divorce after the expiration of two years.    At the same time it is quite clear to our apprehension that the defendant's failure to acknowledge receipt of the letter and to accept the invitation as given did not amount to the 'wilful desertion and abandonment' of the statute.

"The invitation was cold, formal, and upon condition. Demanding her return and the resumption of her 'full duty' as his wife, 'together with the love which she should have' for him, there was no assurance of continued affection on his part, or indication of regret that he had insisted upon their separation.    Moreover, the general tone of the letter is one of complaint, and the last sentence is in the nature of a reproach for which there is no foundation in the evidence respecting the causes of the separation that had taken place.    That the defendant did not accept such invitation, following so speedily after the plaintiff's withdrawal, is not to be wondered at."

In *Heaton* v. *Heaton*, 8 Pa. Dist. Ct. R. 658, where the husband wrote his wife offering to provide a home for her, the court said:

"An earnest consideration of the letter leads us to conclude that it was a mere formal offer, not made in good faith, but purposely so framed as to prevent acceptance within the time limited.    This determination ends the case.    There being no bona-fide offer, there could have been neither refusal nor unreasonable delay in accepting."

"An offer of reconciliation must be made in good faith and not merely to lay a foundation for a divorce, and

must be free from improper qualifications and conditions, and also be concluded in terms likely to bring about a reconciliation.   A cold and formal invitation to return, especially if it contains unfounded charges, or does not contain an offer to accord the other spouse full marital rights or an expression of regret for the offerer's own wrongdoing, is not sufficient as an offer of reconciliation and may be disregarded." (14 Cyc. 619.)

We think the judgment and order of the trial court were clearly right, and should be, and they are hereby, affirmed.